**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

KRYSTOPHER M. JEFFERS,          :

          Plaintiff          :          CIVIL ACTION NO. 3:25-2394

    v.          :          (JUDGE MANNION)

LYCOMING COUNTY PRISON,          :

          Defendant          :

## MEMORANDUM

Currently before the Court is *pro se* Plaintiff Krystopher M. Jeffers ("Jeffers")'s complaint in which he asserts claims under 42 U.S.C. §1983 against the Lycoming County Prison ("LCP"). The Court has screened the complaint under 28 U.S.C. §§1915(e)(2)(B) and 1915A(a). For the reasons stated below, the Court will dismiss the complaint with prejudice and direct the Clerk of Court to close this case.

## I.    BACKGROUND

### A.    Procedural History

Jeffers commenced this action by filing a complaint and an application for leave to proceed *in forma pauperis*, both of which the Clerk of Court docketed on December 11, 2025. (Docs. 1, 2.)[1] Jeffers used an incorrect

---

[1] Jeffers appears to have been incarcerated in the LCP at the time he filed his complaint. *See* (Doc. 1 at 7).

form for seeking leave to proceed *in forma pauperis*; as such, an Administrative Order issued requiring him to either remit the fee or submit a proper *in forma pauperis* application and prisoner trust fund account statement within thirty days. (Doc. 4.) Jeffers timely complied with the Administrative Order in part by filing an application for leave to proceed *in forma pauperis* ("IFP Application") on the proper form, along with an uncertified prisoner trust fund account statement, both of which the Clerk of Court docketed on December 22, 2025. (Docs. 5, 6.) However, because Jeffers's account statement was not certified as required by the *in forma pauperis* statute, *see* 28 U.S.C. §1915(a)(2) ("A prisoner seeking to bring a civil action . . . without prepayment of fees . . . shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . ., obtained from the appropriate official of each prison at which the prisoner is or was confined."), another Administrative Order issued requiring the Warden of the LCP to submit Jeffers's certified account statement. (Doc. 8.) Jeffers's certified account statement was submitted on January 20, 2026. (Doc. 10.) On the same date, Jeffers filed a motion to amend his complaint. (Doc. 11.)

On January 21, 2026, the Court issued an Order which, *inter alia*: (1) granted the IFP Application and allowed Jeffers to proceed *in forma pauperis* in this case; (2) denied Jeffers's motion to amend his complaint as moot because he did not require leave of Court to file an amended complaint at this stage under Federal Rule of Civil Procedure 15; (3) granted Jeffers thirty days to file an amended complaint; and (4) informed Jeffers that if he did not timely file an amended complaint, the Court would proceed to screen his original complaint under 28 U.S.C. §§1915(e)(2)(B) and 1915A(a)–(b). *See* (Doc. 10 at 5–6).

On January 27, 2026, the Clerk of Court docketed a notice of change of address in which Jeffers indicated that he would be released from the LCP on January 19, 2026, and provided his new mailing address. (Doc. 12.) On the same date, the Clerk of Court updated Jeffers's address of record. Approximately a week later, on February 2, 2026, the envelope containing the Court's January 21, 2026 Order, which was mailed to Jeffers at the LCP, was returned as undeliverable. (Doc. 14.) The Clerk of Court promptly mailed Jeffers a copy of the Court's January 21, 2026 Order to him at his new address of record. To date, Jeffers has not filed an amended complaint or a motion for an extension of time to do so, and the time for him to file an

- 3 -

amended complaint has passed. Therefore, Jeffers's complaint is ripe for screening under Sections 1915(e)(2)(B) and 1915A(a)–(b).

### B.   Allegations and Legal Claims in the Complaint

Jeffers's complaint lists the LCP as the only named Defendant,[2] and he alleges that he was sexually harassed and assaulted by his male cellmate, and fought with his cellmate, while incarcerated in the LCP in June 2019. *See* (Doc. 1 at 2). Following this assault, Jeffers submitted a request slip to the LCP's medical staff so he could receive care for rectal bleeding he was experiencing. *See* (*id.*). Jeffers later went to the medical department and had a doctor "look[] into the bleeding." (*Id.*) The doctor allegedly said that they saw "rectal tearing" and prescribed Jeffers a suppository to suppress the bleeding. (*Id.*)

The following day, Jeffers's cellmate submitted a request slip stating that he was bleeding from his penis. *See* (*id.*). A "supervisor" then spoke to

---

[2] Jeffers uses a phrase, "etc. all [sic]," in the caption of his complaint, which the Court construes as a misspelling of "et al." (Doc. 1 at 1.) The use of this Latin phrase, which means "[a]nd other persons," *Et al.*, Black's Law Dictionary (12th ed. 2024), in the caption of the original complaint is improper under the Federal Rules of Civil Procedure because "[t]he title of the complaint must name *all* the parties." Fed. R. Civ. P. 10(a) (emphasis added). Only "the title of other pleadings, after naming the first party on each side, may refer generally to other parties" by using phrases such as "et al." *Id.* Therefore, the Court construes the complaint as containing claims against only the LCP.

- 4 -

Jeffers and inquired, "what's going on?" (*Id.*) At that point, Jeffers "finally reported the fighting and rape." (*Id.*) He also reported these events to the LCP's Prison Rape Elimination Act Coordinator. *See* (*id.*).

Despite these reports, "[n]othing else happened with it." (*Id.*) Jeffers alleges that he did not get proper medical treatment or counseling, and he "d[id] not appreciate them dismissing [his reports] so easily." (*Id.*) Consequently, Jeffers filed "grievances in and [sic] everything." (*Id.*) Thereafter, Jeffers observed multiple LCP correctional officers "kidding about it [and] inmates spreading rumors about it." (*Id.*)

Jeffers asserts that he "want[s] compensation for failure to administer proper [m]edical treatment, as well as [m]ental and emotional anguish, and improper investigation." (*Id.*) He attempts to raise claims under Section 1983 for violations of his rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. *See* (*id.* at 3–4). For relief, he seeks at least $1 million in compensatory and punitive damages for the mental and emotional anguish he continues to suffer. *See* (*id.* at 3, 6).

## II.    LEGAL STANDARDS

### A.    Screening Complaints Under 28 U.S.C. §§1915A and 1915(e)(2)

The Court must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of

- 5 -

a governmental entity." 28 U.S.C. §1915A(a). If such a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint. *See id.* §1915A(b)(1). The Court has a similar screening obligation regarding actions filed by individuals proceeding *in forma pauperis. See id.* §1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . .").

In reviewing legal claims under Sections 1915A(b) or 1915(e)(2)(B), the Court applies the standard governing motions to dismiss filed under Federal Rule of Civil Procedure 12(b)(6). *See, e.g., Smithson v. Koons*, No. 15-cv-1757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under §1915A(b)(1) [and] §1915(e)(2)(B)(ii) . . . is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."), *report and recommendation adopted*, 2017 WL 3008559 (M.D. Pa. July 14, 2017); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to Section 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)"). To avoid dismissal under Rule 12(b)(6), a plaintiff must set out "sufficient factual matter" in the complaint to

show that their claims are facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. *See id.*; *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). However, the Court will not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a district court's screening under Sections 1915A and 1915(e)(2)(B). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

In addition, in the specific context of *pro se* litigation, the Court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe [their] complaint liberally" (citation and

- 7 -

internal quotation marks omitted)). Therefore, a *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting *Estelle*, 429 U.S. at 106). Moreover, when construing a *pro se* complaint, the Court will "apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). However, *pro se* litigants "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.* at 245.

## B.   Section 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. §1983. This statute states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution of laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa.

2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)). "To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## III.    DISCUSSION

### A.    Screening of Jeffers's Complaint

After screening Jeffers's complaint pursuant to Sections 1915(e)(2)(B)(ii) and 1915A, the Court will dismiss his complaint. There are at least three reasons warranting dismissal of Jeffers's complaint, and the Court will discuss each reason in turn.

#### 1.    Jeffers Fails to Name a Proper Defendant

First, Jeffers names only the LCP as a Defendant in his complaint (Doc. 1 at 1), and the LCP is not a proper Defendant under Section 1983 insofar as it is not a "person" amenable to suit under this statute. *See Edwards v. Northampton Cnty.*, 663 F. App'x 132, 136 (3d Cir. 2016) (unpublished) (affirming district court's dismissal of prisoner-plaintiff's conditions-of-confinement claims against a county prison because it is not a person subject to suit under Section 1983 (citing *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973))); *Lenhart v. Pennsylvania*, 528 F. App'x 111, 114 (3d Cir. 2013)

- 9 -

(unpublished) (concluding that district court properly dismissed claims against county prison because even though "[a] local governmental agency may be a 'person' for purposes of §1983 liability[, the county prison] is not a person capable of being sued within the meaning of §1983") (internal citations omitted); *Mincy v. Deparlos*, 497 F. App'x 234, 239 (3d Cir. 2012) (unpublished) (determining that district court properly concluded that county prison is not "person" within meaning of section 1983); *Wilkerson v. Lycoming Cnty. Prison*, No. 25-cv-411, 2025 WL 1239329, at *3 (M.D. Pa. Apr. 29, 2025) (dismissing prisoner-plaintiff's Section 1983 claims against LCP because it "is not a 'person' subject to suit under Section 1983" (citing *Lenhart*, 528 F. App'x at 114 and *Clay v. Lycoming Cnty. Prison*, No. 21-cv-1415, 2021 WL 4552236, at *2 (M.D. Pa. Oct. 5, 2021))). Accordingly, Jeffers's failure to name a proper Defendant warrants dismissal of his Section 1983 claims for failure to state a claim for relief under Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 2.    The Statute of Limitations Bars Jeffers's Claims

Second, it is apparent from the face of Jeffers's complaint that the applicable statute of limitations bars his Section 1983 claims in this case. The Court will first recite the applicable law before discussing how the applicable statute of limitations bars Jeffers's claims.

- 10 -

### a.    Applicable Law

The statute of limitations is ordinarily an affirmative defense, *see* Fed. R. Civ. P. 8(c) (listing statute of limitations among affirmative defenses); however, a district court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint. *See Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) ("A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint."); *see also Ball v. Famiglio*, 726 F.3d 448, 459 (3d Cir. 2013) (explaining that if affirmative defense appears on face of complaint, court can dismiss complaint under Rule 12(b)(6)), *abrogated on other grounds by Coleman v. Tollefson*, 575 U.S. 532 (2015); *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988) (affirming district court's denial of leave to amend where proposed amended complaint would not survive renewed motion for judgment on pleadings because it would be barred by statute of limitations). This legal principle applies equally to a district court's screening under Section 1915. *See Whitenight v. Commw. of Pa. State Police*, 674 F. App'x 142, 144 (3d Cir. 2017) (unpublished) ("When screening a complaint under §1915, a district court may *sua sponte* dismiss the complaint as untimely under the statute of limitations where the defense

- 11 -

is obvious from the complaint and no development of the factual record is required." (citations omitted)); *Peele v. McLaughlin*, 641 F. App'x 111, 112 (3d Cir. 2016) (unpublished) (explaining that even though "the statute of limitations is an affirmative defense [under Rule 8(c) of the Federal Rules of Civil Procedure], a district court may *sua sponte* dismiss a complaint under §1915(e) where the defense is obvious from the complaint and no development of the factual record is required"); *see also Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) ("A complaint may be dismissed *sua sponte* under §1915 based on an affirmative defense—such as statute of limitations—only when the defense is obvious from the face of the complaint and no further factual record is required to be developed." (citation and internal quotation marks omitted)).

Here, Jeffers's Section 1983 claims are subject to the applicable state's statute of limitations for personal injury actions. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007) (concluding that statute of limitations for section 1983 actions "is governed by the personal injury tort law of the state where the cause of action arose"). Because Jeffers's claims arose in Lycoming County, Pennsylvania, this Court applies Pennsylvania's relevant limitations period, which is two years. *See Wisniewski*, 857 F.3d at 157 (stating that "[t]he statute of limitations applicable to §1983 claims in Pennsylvania is two

- 12 -

years" (citation omitted)); 42 Pa. C.S. §5524(2) ("The following actions and proceedings must be commenced within two years . . . (2) An action to recover damages for injuries to the person . . . caused by the wrongful act or neglect or unlawful violence or negligence of another."). This two-year limitations period accrues "when a plaintiff has a complete and present cause of action, that is, when [the plaintiff] can file suit and obtain relief." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (quotation marks and citation omitted). This means that the statute of limitations generally "accrues when the plaintiff knew or should have known of the injury upon which [the] action is based." *Sameric Corp. of Del., Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998).

In certain circumstances, Pennsylvania's discovery rule may operate to delay the running of the statute of limitations. *See Nicolaou v. Martin*, 195 A.3d 880, 892 (Pa. 2018) ("[T]he discovery rule tolls the statute of limitations where the plaintiff is reasonably unaware that he has been injured and that his injury has been caused by another party's conduct."). In other words,

> [w]here the plaintiff's injury or its cause was neither known nor reasonably ascertainable, [Pennsylvania's] discovery rule tolls the statute of limitations . . . . The statute of limitations accordingly begins to run when the plaintiff knew or, exercising reasonable diligence, should have known (1) [they were] injured and (2) that the injury was caused by another. That reasonable diligence standard is an objective one, but at the same time sufficiently flexible to take into account the differences between

- 13 -

persons and their capacity to meet certain situations and the circumstances confronting them at the time in question.

*Adams v. Zimmer*, 943 F.3d 159, 163–64 (3d Cir. 2019) (internal quotation marks and citations omitted). Whether or not Pennsylvania's discovery rule applies in a case is a question of fact that the factfinder must resolve, *see id.* ("[T]he question '[w]hether [a plaintiff] should have acted with greater diligence to investigate' or otherwise should have known of [their] injury earlier 'can only be seen as an issue of fact.'" (quoting *Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011))), unless "reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of [the party's] injury and its cause[,]" which would allow the court to determine that "the discovery rule does not apply as a matter of law." *Fine v. Checcio*, 870 A.2d 850, 858–59 (Pa. 2005) (citation omitted).

Along with Pennsylvania's discovery rule, the continuing-violations doctrine can affect the statute of limitations bar. In some circumstances, courts may toll the statute of limitations if a defendant's conduct constitutes a "continuing violation." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001). This "equitable exception" applies "when a defendant's conduct is part of a continuing practice[.]" *Id.* Under this exception, "an action is timely so long as the last act evidencing the continuing practice falls within the

- 14 -

limitations period[.]" *Id.* (citations and quotation marks omitted). Courts consider "at least three factors" when assessing whether the exception applies, namely:

> (1) subject matter—whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency—whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence—whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert [their] rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. The consideration of "degree of permanence" is the most important of the factors.

*Id.* (citations omitted).

The continuing-violations doctrine does not toll the statute of limitations based solely on "the occurrence of isolated or sporadic acts." *Id.* (citation and quotation marks omitted). Instead, "[t]he Court must consider carefully the distinction between 'continuing violations' and 'discrete acts.'" *Anders v. Bucks Cnty.*, No. 13-cv-5517, 2014 WL 1924114, at *4 (E.D. Pa. May 12, 2014) (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006)). Thus, "[e]ach discriminatory act starts a new clock for filing charges alleging that act." *Hunt v. Pa. Dep't of Corr.*, 289 F. App'x 507, 509 (3d Cir. 2008) (unpublished) (citations and quotation marks omitted). For example, the "continuing violation" exception does not apply to a Section 1983 deliberate indifference claim merely because the plaintiff continues to suffer

- 15 -

pain from an initial failure to provide medical treatment. *See Hickox v. Cnty. of Blair*, 591 F. App'x 107, 110, 111 (3d Cir. 2014) (unpublished) (holding continuing violation exception to limitations bar inapplicable because it "refers to continual unlawful acts [by the defendants], not continual ill effects from an original violation[ ]" (alteration in original) (citations and quotation marks omitted)).

### b.   Analysis

When determining whether the statute of limitations bars Jeffers's Section 1983 claims, the Court must first identify his specific claims. Jeffers renders this task somewhat more complicated than usual because most of his complaint contains references to numerous legal principles, including several Amendments to the Constitution, caselaw, and even the Third Circuit's Standard Civil Jury Instructions. *See* (Doc. 1 at 1, 3–6). Despite Jeffers's numerous legal references, most of them are inapplicable to his factual allegations. *See* (*id.*). For instance, Jeffers mentions (1) violations of the Fourth Amendment for false arrest, false imprisonment, and malicious abuse of process, *see* (*id.* at 1, 3, 4); (2) his Sixth Amendment right to an impartial tribunal, *see* (*id.* at 3); (3) deprivations of his due process rights under the Fifth and Fourteenth Amendments, *see* (*id.*); and (4) retaliation in violation of the First Amendment, *see* (*id.* at 4). None of these causes of

action relate to Jeffers's factual allegations in which he complains about insufficient medical care he received following his report of his cellmate's assault and a failure to investigate his report of the assault. Therefore, the Court does not construe Jeffers's complaint as containing any claims for violations of his Fourth, Fifth, and Sixth Amendment rights even though those Amendments are mentioned in Jeffers's complaint. Instead, the Court construes the complaint as containing deliberate-indifference-to-serious-medical-needs and failure-to-investigate claims in violation of the Constitution.[3]

Starting with Jeffers's Section 1983 deliberate-indifference-to-serious-medical-needs claim, the limitations period for this claim accrues when the plaintiff "knew, or had reason to know, of [their] alleged mistreatment." *Smith*

---

[3] The Court will not characterize Jeffers's Section 1983 claims as falling under a specific Amendment because it is unclear whether Jeffers was a pretrial detainee or a convicted prisoner when the events described in his complaint allegedly occurred. If Jeffers was a pretrial detainee, the Fourteenth Amendment's Due Process Clause would govern his deliberate-indifference claims in this case. *See, e.g.*, *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005) (applying Fourteenth Amendment to plaintiff's deliberate-indifference claims. On the other hand, if Jeffers was a convicted prisoner, the Eighth Amendment's prohibition on cruel and unusual punishment governs his deliberate indifference claims. *See McFadden v. Dalmasi*, 837 F. App'x 135, 136 n.3 (3d Cir. 2020) (unpublished) (noting that the Eighth Amendment applies to deliberate-indifference claims brought by convicted prisoners). Despite this deficiency with Jeffers's complaint, the Court's analysis of the application of the statute of limitations to his Section 1983 claims would remain the same.

- 17 -

*v. Mun. of Lycoming Cnty.*, 335 F. App'x 147, 149 (3d Cir. 2009) (unpublished); *see Devbrow v. Kalu*, 705 F.3d 765, 768 (7th Cir. 2013) ("A §1983 claim to redress a medical injury arising from deliberate indifference to a [plaintiff's] serious medical needs accrues when the plaintiff knows of [their] physical injury and its cause. The statute of limitations starts to run when the plaintiff discovers [their] injury and its cause even if the full extent or severity of the injury is not yet known."); *In re Davis*, No. 21-cv-5701, 2022 WL 2052645, at *5 (E.D. Pa. June 7, 2022) ("A claim alleging deliberate indifference to serious medical needs accrues when the plaintiff knows or has reason to know that deliberate indifference is displayed." (citations omitted)). In this case, Jeffers's allegations sufficiently demonstrate that he was aware of any lack of medical treatment soon after he reported the sexual assault in June 2019. He failed to file a deliberate-indifference claim within the two-year limitations period, and he did not file the instant case until more than four years passed after the expiration of the limitations period. Moreover, he does not allege any facts about deficient medical treatment relating to his sexual assault which occurred within the two-year period preceding his filing of the complaint. As such, the statute of limitations bars Jeffers's deliberate-indifference-to-serious-medical-needs claim.

As for Jeffers's failure-to-investigate claim, "courts hold that the claim accrues when it becomes apparent that the defendants have failed to investigate." *Hobbs v. Unified Gov't of Wyandotte Cnty.*, No. 24-cv-2422, 2025 WL 2054606, at *5 (D. Kan. June 18, 2025) (citations omitted); *see Soppick v. Borough of W. Conshohocken*, 118 F. App'x 631, 635 (3d Cir. 2004) (unpublished) ("The Soppicks knew, or had reason to know, that the injury stemming from the Borough's failure to investigate occurred on or around August 6, 2000, when the Borough's failure to investigate became apparent."). Here, it would have become apparent to Jeffers that there was not going to be any investigation of his claim relating to his cellmate's sexual assault well more than two years from the filing of his complaint in this case. Therefore, the statute of limitations also bars Jeffers's Section 1983 failure-to-investigate claim.

### 3.    Jeffers Fails to State Plausible Claims for Relief

Third, and finally, even if the statute of limitations did not bar Jeffers's Section 1983 deliberate-indifference-to-serious-medical-needs and failure-to-investigate claims, he fails to state plausible claims for relief in his complaint. For Jeffers to state a plausible claim based on the failure to provide adequate medical treatment, he must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See*

- 19 -

*Farmer v. Brennan*, 511 U.S. 825, 835 (1994).[4] A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id.* at 837. A plaintiff properly alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (explaining that a prisoner-plaintiff can show deliberate indifference where prison official "intentionally den[ied] or delay[ed] access to medical care or

---

[4] Even though the Court lacks information about Jeffers's incarceration status to determine whether the Eighth or Fourteenth Amendment applies to this claim, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same. *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (unpublished); *see also Moore v. Luffey*, No. 18-1716, 2019 WL 1766047, at *3 n.2 (3d Cir. Apr. 19, 2019) (unpublished) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care); *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 & n.23 (3d Cir. 2023) (applying Eighth Amendment standard to pretrial detainee's medical care claim).

intentionally interfer[ed] with the treatment once prescribed" (internal citations and quotation marks omitted)).

"A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks omitted). Moreover, a serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

In this case, although the Court does not underestimate the physical and emotional impact of the alleged sexual assault upon Jeffers, he does not allege that he had a serious medical need that officials at LCP failed to address. To the extent that Jeffers had a serious medical need insofar as the LCP doctor observed rectal tearing from the alleged assault, he does not appear to complain about the doctor's treatment. Instead, Jeffers complains only about the lack of counseling he received once he finally reported the assault.

Although Jeffers complains about not receiving counseling, he does not allege a medical need that LCP officials needed to address, and the

- 21 -

Court will not speculate about his possible medical need and whether it was sufficiently serious. To the extent that Jeffers's allegation is based on his desire for counseling, such a desire is insufficient to establish a prison official's deliberate indifference. Furthermore, Jeffers fails to plead that any LCP official knew about his need for medical treatment (such as counseling) but intentionally refused to provide it, delayed necessary treatment for a non-medical reason, or prevented him from receiving needed or recommended medical treatment. Therefore, Jeffers fails to state a plausible deliberate-indifference-to-serious-medical-needs claim in his complaint.

As for Jeffers's failure-to-investigate claim, such a claim is ordinarily not cognizable under Section 1983:

> [I]t is well established that "there is no constitutional right to the investigation or prosecution of another." *Sanders v. Downs*, 420 F. App'x 175, 180 (3d Cir. 2011) (per curiam); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). Second, "an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) (quotations omitted); *see also Boseski v. N. Arlington Municipality*, 621 F. App'x 131, 135 (3d Cir. 2015) (per curiam) ("Boseski has no cognizable claim against a government entity for its failure to investigate or bring criminal charges against another individual.").

*Hernandez v. Dep't of Corr.*, No. 25-cv-2018, 2025 WL 3207519, at *4 (E.D. Pa. Nov. 17, 2025); *see also Hakala v. Klem*, No. 09-cv-833, 2009 WL

- 22 -

3852787, at *5 (M.D. Pa. Nov. 18, 2019) ("[T]he failure to favorably address, respond to and/or investigate . . . do[es] not implicate a constitutional right." (citing *Bailey v. Palakovich*, No. 06-cv-1640, 2007 WL 1450698, at *3–4 (M.D. Pa. May 14, 2007))).

> Jeffers's failure-to-investigate claim fails here because:
>
> There is no other "recognizable constitution right" involved here because, as at least one court has held, there is no protected liberty interest to support a due process claim associated with a prisoner's demand that an alleged rape be investigated by prison officials. *See Pietrak v. Litz*, No. 25-[cv]-1121, 2025 WL 3015788, at *4 (M.D. Pa. Oct. 28, 2025) (dismissing claims asserting that warden and prison medical contractor refused to investigate a prisoner's claim of sexual assault because the prisoner had "not identified a protected interest that is at stake. There is simply no due process 'life, liberty, or property' interest involved with investigating, or failing to investigate, a sexual assault in prison."; and stating that a violation of the Prison Rape Elimination Act of 2003 (PREA) "would not constitute a Fourteenth Amendment due process infringement").

*Hernandez*, 2025 WL 3207519, at *4. Accordingly, even if Jeffers's failure-to-investigate claim was not barred by the statute of limitations, his claim would be subject to dismissal for failure to state a plausible claim for relief.

## B.    Leave to Amend

Having determined that Jeffers's claims against Defendants in his complaint are subject to dismissal, the Court must decide whether to grant him leave to file an amended complaint. Although district courts should generally give leave to amend, they may dismiss a complaint with prejudice

- 23 -

where leave to amend would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does *not* seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend within a set period of time, unless amendment would be inequitable or futile."). "In determining whether [amendment] would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

Here, the Court will not grant Jeffers leave to file an amended complaint because doing so would be futile. Even if Jeffers could replead his Section 1983 claims in this case by naming the individuals from the LCP who allegedly violated his constitutional rights or by adding facts to his deliberate-indifference-to-serious-medical-needs claim, the statute of limitations bars his Section 1983 claims. Accordingly, the Court will dismiss with prejudice

- 24 -

Jeffers's Section 1983 claims under Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

## IV.  CONCLUSION

For the foregoing reasons, the Court will dismiss with prejudice Jeffers's complaint and direct the Clerk of Court to close this case. An appropriate Order follows.

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 3/9/26
25-2394-01

- 25 -